# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

DAVID BRAASCH,

TAMARA MCLAUGHLIN,

LISANA MOHAMED,

UNITED FACULTY OF FLORIDA–
   UNIVERSITY OF SOUTH FLORIDA,

and

UNITED FACULTY OF FLORIDA,

                    *Plaintiffs*,

v.

BRIAN LAMB, in his official capacity as
   chair of the Florida Board of Gover-
   nors,

ERIC SILAGY, in his official capacity as
   vice chair of the Florida Board of Gov-
   ernors,

MANNY DIAZ, JR., in his official capac-
   ity as Florida Commissioner of Educa-
   tion and a member of the Florida Board
   of Governors,

TIMOTHY M. CERIO, in his official ca-
   pacity as a member of the Florida
   Board of Governors,

AUBREY EDGE, in her official capacity
   as a member of the Florida Board of
   Governors,

Case No. _____

PATRICIA FROST, in her official capacity as a member of the Florida Board of Governors,

JACKSON HITCHCOCK, in his official capacity as a member of the Florida Board of Governors,

EDWARD HADDOCK, in his official capacity as a member of the Florida Board of Governors,

KEN JONES, in his official capacity as a member of the Florida Board of Governors,

DARLENE LUCCIO JORDAN, in her official capacity as a member of the Florida Board of Governors,

ALAN LEVINE, in his official capacity as a member of the Florida Board of Governors,

CHARLES H. LYDECKER, in his official capacity as a member of the Florida Board of Governors,

CRAIG MATEER, in his official capacity as a member of the Florida Board of Governors,

JOSE OLIVA, in his official capacity as member of education of the Florida Board of Governors,

AMANDA J. PHALIN, in her official capacity as a member of the Florida Board of Governors,

WILLIAM WEATHERFORD, in his official capacity as Chair of the University of South Florida Board of Trustees,

MICHAEL E. GRIFFIN, in his official capacity as Vice Chair of the University of South Florida Board of Trustees,

SANDRA CALLAHAN, in her official capacity as member of the University of South Florida Board of Trustees,

MICHAEL CARRERE, in his official capacity as member of the University of South Florida Board of Trustees,

N. ROGAN DONELLY, in his official capacity as member of the University of South Florida Board of Trustees,

CESAR ESMERALDI, in his official capacity as member of the University of South Florida Board of Trustees,

OSCAR HORTON, in his official capacity as member of the University of South Florida Board of Trustees,

JENIFER JASINKSI SCHNEIDER, in her official capacity as member of the University of South Florida Board of Trustees,

LAURAN MONBARREN, in her official capacity as member of the University of South Florida Board of Trustees,

SHILEN PATEL, in his official capacity as member of the University of South Florida Board of Trustees,

3

FREDRICK PICCOLO, in his official ca-
  pacity as member of the University of
  South Florida Board of Trustees,

and

MELISSA SEIXAS, in her official capac-
  ity as member of the University of
  South Florida Board of Trustees,

*Defendants*.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs DAVID BRAASCH, TAMARA MCLAUGHLIN, LISANA MO-

HAMED (together with David Braasch and Tamara McLaughlin, the "Individual

Plaintiffs"), UNITED FACULTY OF FLORIDA–UNIVERSITY OF SOUTH

FLORIDA ("UFF-USF"), and UNITED FACULTY OF FLORIDA ("UFF" and, to-

gether with UFF-USF, the "Union Plaintiffs"), through their attorneys Selendy Gay

Elsberg PLLC and Phillips, Richard & Rind P.A., for their action against Defendants

BRIAN LAMB, in his official capacity as chair of the Florida Board of Governors,

ERIC SILAGY, in his official capacity as vice chair of the Florida Board of Gover-

nors, MANNY DIAZ, JR., in his official capacity as Florida Commissioner of Edu-

cation and a member of the Florida Board of Governors, TIMOTHY M. CERIO, in

his official capacity as a member of the Florida Board of Governors, AUBREY

EDGE, in her official capacity as a member of the Florida Board of Governors,

4

PATRICIA FROST, in her official capacity as a member of the Florida Board of Governors, JACKSON HITCHCOCK, in his official capacity as a member of the Florida Board of Governors, EDWARD HADDOCK, in his official capacity as a member of the Florida Board of Governors, KEN JONES, in his official capacity as a member of the Florida Board of Governors, DARLENE LUCCIO JORDAN, in her official capacity as a member of the Florida Board of Governors, ALAN LEVINE, in his official capacity as a member of the Florida Board of Governors, CHARLES H. LYDECKER, in his official capacity as a member of the Florida Board of Governors, CRAIG MATEER, in his official capacity as a member of the Florida Board of Governors, JOSE OLIVA, in his official capacity as a member of the Florida Board of Governors, AMANDA J. PHALIN, in her official capacity as a member of the Florida Board of Governors, WILLIAM WEATHERFORD, in his official capacity as Chair of the University of South Florida Board of Trustees, MICHAEL E. GRIFFIN, in his official capacity as Vice Chair of the University of South Florida Board of Trustees, SANDRA CALLAHAN, in her official capacity as member of the University of South Florida Board of Trustees, MICHAEL CARRERE, in his official capacity as member of the University of South Florida Board of Trustees, N. ROGAN DONELLY, in his official capacity as member of the University of South Florida Board of Trustees, CESAR ESMERALDI, in his official

5

capacity as member of the University of South Florida Board of Trustees, OSCAR HORTON, in his official capacity as member of the University of South Florida Board of Trustees, JENIFER JASINKSI SCHNEIDER, in her official capacity as member of the University of South Florida Board of Trustees, LAURAN MON-BARREN, in her official capacity as member of the University of South Florida Board of Trustees, SHILEN PATEL, in his official capacity as member of the University of South Florida Board of Trustees, FREDRICK PICCOLO, in his official capacity as member of the University of South Florida Board of Trustees, and MELISSA SEIXAS, in her official capacity as member of the University of South Florida Board of Trustees, allege as follows:

## NATURE OF THE ACTION

1.     This case is a challenge to a provision of Section 3, Senate Bill 266 ("SB 266"), codified at Florida Statutes Section 1001.741(2), which eliminates public university faculty's right to arbitrate adverse personnel decisions before a neutral arbiter (the "Arbitration Ban")—a right that is explicitly protected under Florida Statutes Section 447.401, and a material part of Plaintiffs' currently operational Collective Bargaining Agreement ("CBA"), Ex. A.

2.     For more than half a century, the State of Florida has mandated the right to arbitrate adverse personnel decisions before a neutral arbiter. Florida Statutes Section 447.401 provides that "each public employer and bargaining agent shall

negotiate a grievance procedure … [which] shall have as its terminal step a final and binding disposition by an impartial neutral, mutually selected by the parties."

3.    The Arbitration Ban explicitly eliminates this right for public university faculty:

> Notwithstanding s. 447.401 or any other law related to faculty grievance procedures, personnel actions or decisions regarding faculty, including in the areas of evaluations, promotions, tenure, discipline, or termination, may not be appealed beyond the level of a university president or designee. Such actions or decisions must have as their terminal step a final agency disposition … and are not subject to arbitration.

Fla. Stat. § 1001.741(2).

4.    The Arbitration Ban thereby unconstitutionally interferes with Plaintiffs' rights under an existing contract—their CBA—in violation of Article I, Section 10 of the United States Constitution.

5.    The Individual Plaintiffs, as members of UFF and UFF-USF, were guaranteed a right to arbitrate adverse personnel decisions before a neutral arbiter under a valid and binding CBA with the University of South Florida Board of Trustees, whose members are Defendants in this action. Plaintiffs UFF, a public employee union, and UFF-USF, a local chapter of UFF that represents the faculty of the University of South Florida ("USF" or the "University"), negotiated and are parties to that CBA, which is in effect through August 7, 2024.

7

6.     The Individual Plaintiffs also have individual employment contracts (the "Employment Contracts") with the University of South Florida, for which they have each worked for more than a decade. The Employment Contracts have no expiration date and may be terminated only through specific procedures. Ex. B (Aug. 2, 2012 Braasch Employment Contract); Ex. C (Dec. 6, 2011 McLaughlin Employment Contract); Ex. D (Mar. 30, 2011 Mohamed Employment Contract). These Employment Contracts confirm that, pursuant to the CBA, the Individual Plaintiffs have a right to arbitrate adverse personnel decisions before a neutral arbiter.

7.     Defendants violated the Individual Plaintiffs' contractual rights by laying off the Individual Plaintiffs and refusing to arbitrate the Individual Plaintiffs' grievances before a neutral arbiter because of the Arbitration Ban.

8.     Separately, the Fourteenth Amendment to the United States Constitution provides that no person shall be deprived of property without due process of law. A CBA or another employment contract creates a property right in employment where, as here, it guarantees public employees—including the Individual Plaintiffs—process, including fair notice and/or the opportunity for a fair hearing, before termination of employment, or otherwise creates a reasonable expectation of continued employment.

8

9.     Fourteenth Amendment due process protections require (i) fair notice of a possible deprivation of a property right and (ii) an opportunity to be heard at a meaningful time and in a meaningful manner, meaning, at a minimum, a hearing before a neutral arbiter who is free from bias or the appearance of bias.

10.    The Arbitration Ban denies the Individual Plaintiffs and other members of the Union Plaintiffs their due process rights under the Fourteenth Amendment by imbuing public university presidents, who are not neutral arbiters, with unfettered power to deprive the Individual Plaintiffs and other members of the Union Plaintiffs of their property rights in continued employment created by the CBA and their Employment Contracts.

11.    Plaintiffs seek a declaration that the Arbitration Ban violates Article I, Section 10 of the United States Constitution (Count I) and the Fourteenth Amendment to the United States Constitution (Count II). Plaintiffs further seek preliminary and permanent injunctions prohibiting Defendants from enforcing the Arbitration Ban and requiring Defendants to arbitrate adverse personnel decisions concerning the Individual Plaintiffs before a neutral arbiter, as required by their CBA and confirmed by the Employment Contracts.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this case arises under the Constitution and laws of the United States. This Court also has

jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) because this case seeks to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988, 28 U.S.C. §§ 2201 and 2202, and this Court's inherent equitable powers.

13.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because all Defendants are residents of Florida, at least one Defendant resides in this district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

14.    Venue is proper in this division under Local Rule 3.1(B), as all Defendants are residents of Florida, at least one Defendant resides in Leon County, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Leon County.

## PARTIES

15.    Plaintiff David Braasch brings this action on his own behalf. Plaintiff Braasch is a member of UFF-USF. He taught at the University of South Florida since 2012 but was laid off on August 4, 2023. Plaintiff Braasch is an intended third-party beneficiary of the CBA between UFF-USF, UFF, and the University of South Florida Board of Trustees because the CBA guarantees him numerous specific rights. Plaintiff Braasch's Employment Contract also guarantees him certain rights. In relevant part, the CBA contains a grievance procedure allowing Plaintiff Braasch to

arbitrate adverse personnel decisions before a neutral arbiter, a right confirmed by his Employment Contract.

16.    Plaintiff Tamara McLaughlin brings this action on her own behalf. Plaintiff McLaughlin is a member of UFF-USF. She taught at the University of South Florida since 2011 but was laid off on August 4, 2023. She is an intended third-party beneficiary of the CBA between UFF-USF, UFF, and the University of South Florida Board of Trustees because the CBA guarantees her numerous specific rights. Plaintiff McLaughlin's Employment Contract also guarantees her certain rights. In relevant part, the CBA contains a grievance procedure allowing Plaintiff McLaughlin to arbitrate adverse personnel decisions before a neutral arbiter, a right confirmed by her Employment Contract.

17.    Plaintiff Lisana Mohamed brings this action on her own behalf. Plaintiff Mohamed is a member of UFF-USF. She taught in her current role at the University of South Florida since 2011 but was laid off on August 4, 2023. She is an intended third-party beneficiary of the CBA between UFF-USF, UFF, and the University of South Florida Board of Trustees because the CBA guarantees her numerous specific rights. Plaintiff Mohamed's Employment Contract also guarantees her certain rights. In relevant part, the CBA contains a grievance procedure allowing

Plaintiff Mohamed to arbitrate adverse personnel decisions before a neutral arbiter, a right confirmed by her Employment Contract.

18.    Plaintiff UFF, which brings suit on its own behalf and on behalf of its members, is a statewide affiliate and local chapter of the Florida Education Association ("FEA") representing more than 25,000 faculty, graduate employees, and academic professionals at all 12 Florida public universities, 16 state and community colleges, and four K-12 lab schools. UFF is certified by the Public Employee Relations Commission as the collective bargaining representative of faculty, graduate employees, and academic professionals employed by the University of South Florida, in addition to other public employers.

19.    Plaintiff UFF-USF, which brings suit on its own behalf and on behalf of its members, is a union with nearly 1,500 members employed as faculty by the University of South Florida. UFF-USF is a local chapter of UFF and is affiliated with FEA, the National Education Association, the American Federation of Teachers, and the American Federation of Labor and Congress of Industrial Organizations.

20.    Plaintiff UFF-USF, with the support of UFF, negotiates the CBA with the University of South Florida Board of Trustees, represents faculty members in grievance proceedings under the CBA, and engages in other advocacy in support of higher education faculty and public education more generally.

21.     Defendant Brian Lamb serves as the chair of the Florida Board of Governors. The Florida Board of Governors is a public agency, located in Tallahassee, that oversees the operation and management of the Florida university system's twelve institutions. The Board of Governors is established pursuant to Article IX, Section 7(d) of the Florida Constitution. The Board of Governors is responsible for public universities' implementation of Florida statutes, including SB 266. *See* Fla. Stat. §§ 20.155(4)(a), 1001.706. Defendant Lamb is sued in his official capacity.

22.     Defendant Eric Silagy serves as the vice chair of the Florida Board of Governors. He is sued in his official capacity.

23.     Defendant Manny Diaz, Jr. serves as the Florida Commissioner of Education and is a member of the Board of Governors. He is sued in his official capacity.

24.     Defendant Timothy M. Cerio serves as a member of the Florida Board of Governors. He is sued in his official capacity.

25.     Defendant Aubrey Edge serves as a member of the Florida Board of Governors. He is sued in his official capacity.

26.     Defendant Patricia Frost serves as a member of the Florida Board of Governors. She is sued in her official capacity.

27.     Defendant Jackson Hitchcock serves as a member of the Florida Board of Governors. He is sued in his official capacity.

28.     Defendant Edward Haddock serves as a member of the Florida Board of Governors. He is sued in his official capacity.

29.     Defendant Ken Jones serves as a member of the Florida Board of Governors. He is sued in his official capacity.

30.     Defendant Darlene Luccio Jordan serves as a member of the Florida Board of Governors. She is sued in her official capacity.

31.     Defendant Alan Levine serves as a member of the Florida Board of Governors. He is sued in his official capacity.

32.     Defendant Charles H. Lydecker serves as a member of the Florida Board of Governors. He is sued in his official capacity.

33.     Defendant Craig Mateer serves as a member of the Florida Board of Governors. He is sued in his official capacity.

34.     Defendant Jose Oliva serves as a member of the Florida Board of Governors. He is sued in his official capacity.

35.     Defendant Amanda J. Phalin serves as a member of the Florida Board of Governors. She is sued in her official capacity.

14

36.     Defendant William Weatherford serves as the Chair of the University of South Florida Board of Trustees. He is sued in his official capacity.

37.     Defendant Michael E. Griffin serves as the Vice Chair of the University of South Florida Board of Trustees. He is sued in his official capacity.

38.     Defendant Sandra Callahan serves as a member of the University of South Florida Board of Trustees. She is sued in her official capacity.

39.     Defendant Michael Carrere serves as a member of the University of South Florida Board of Trustees. He is sued in his official capacity.

40.     Defendant N. Rogan Donelly serves as a member of the University of South Florida Board of Trustees. He is sued in his official capacity.

41.     Defendant Cesar Esmeraldi serves as a member of the University of South Florida Board of Trustees. He is sued in his official capacity.

42.     Defendant Oscar Horton serves as a member of the University of South Florida Board of Trustees. He is sued in his official capacity.

43.     Defendant Jenifer Jasinski Schneider serves as a member of the University of South Florida Board of Trustees. She is sued in her official capacity.

44.     Defendant Lauran Monbarren serves as a member of the University of South Florida Board of Trustees. She is sued in her official capacity.

45.     Defendant Shilen Patel serves as a member of the University of South Florida Board of Trustees. He is sued in his official capacity.

46.     Defendant Fredrick Piccolo serves as a member of the University of South Florida Board of Trustees. He is sued in his official capacity.

47.     Defendant Melissa Seixas serves as a member of the University of South Florida Board of Trustees. She is sued in her official capacity.

## FACTS

## I.     Plaintiffs Have a Right to Arbitration, and Defendants' Implementation of the Arbitration Ban Nullified It

48.     UFF-USF, with the support of UFF, negotiated a CBA with the University of South Florida Board of Trustees. The CBA establishes the rights and obligations among and between the Union Plaintiffs, their union members, the University of South Florida, and the University of South Florida Board of Trustees. Individual Plaintiffs David Braasch, Tamara McLaughlin, and Lisana Mohamed are members of UFF-USF and have rights under the CBA.

49.     The current CBA between UFF, UFF-USF, and the University of South Florida Board of Trustees, a copy of which is attached to this Complaint as Exhibit A, contains a provision stating that UFF shall have the right to represent any faculty member in a grievance filed under the CBA.

16

50.     That CBA establishes a three-step grievance process for faculty members to challenge adverse personnel actions, including decisions related to employment. Under the CBA, in the event of an adverse decision involving the interpretation or application of the CBA's terms or provisions (on tenure, post-tenure review, or other matters related to employment), faculty members are guaranteed the right to seek review (at Step 1) informally, with the appropriate administrator, then (at Step 2) with the designated university representative, and finally (at Step 3) through binding arbitration before a neutral arbiter. *See, e.g.*, Ex. A, art. 20.8(C)–(E) (providing for such an arbitration procedure). The CBA expressly states: "If the grievance has not been satisfactorily resolved … UFF may, upon the request of the grievant, proceed to arbitration by filing a written notice of the intent to do so." *Id.* art. 20.8(E).

51.     The CBA also contains detailed procedures regarding the timing, venue, scope, procedure, and costs of arbitration, including the requirement of a neutral arbiter. *See id.* art. 20.8. It confirms that "[t]he decision or award of the arbitrator shall be final and binding upon the University, the UFF, and the grievant, provided that either party may appeal to an appropriate court of law." *Id.* art. 20.8(E)(3). The CBA also guarantees certain terms of the Individual Plaintiffs' Employment Contracts, including that the employee's signature on the Employment Contract "shall

not be deemed a waiver of the right to process a grievance with respect thereto in compliance with Article 20" of the CBA. *Id.* art. 8.3(A).

52.    The Employment Contracts themselves state: "Your signature on this document shall not be deemed a waiver of the right to process a grievance with respect thereto in compliance with [the CBA's] Article 20 Grievance Procedures and Arbitration." Ex. B at 2; Ex. C at 2; Ex. D at 2.

53.    The Arbitration Ban—in contrast—explicitly *prevents* public university faculty from proceeding to arbitration before a neutral arbiter to challenge a public university's "personnel actions or decisions regarding faculty, including in the areas of evaluations, promotions, tenure, discipline, or termination."

54.    Following the Arbitration Ban, the Office of General Counsel of the University of South Florida declared, in "Faculty Guidance [on] Senate Bill 266," that under SB 266, "the university president, or designee, is now the final level of appeal for faculty employment actions, which replaces the option of external arbitration in USF regulations and the USF-UFF faculty collective bargaining agreement (CBA)." Ex. E at 3. The University of South Florida stated that it "will process arbitration as follows: faculty grievances that reached the arbitration stage prior to the Effective Date [July 1, 2023] will be processed to external arbitration; grievances filed after the Effective Date will not be processed to external arbitration; and

grievances filed prior to Effective Date, but that have not reached arbitration by the Effective Date will not be processed to external arbitration." *Id.* at 3, 4.

## II.   The Individual Plaintiffs Had a Property Right in Their Continued Employment and Defendants' Implementation of the Arbitration Ban Eliminated It Without Adequate Process

55.   The Individual Plaintiffs were employed at the University of South Florida until they were laid off on August 4, 2023. Each had been employed at the University of South Florida for more than 10 consecutive years.

56.   The CBA establishes detailed protections for the Individual Plaintiffs' employment. *E.g.*, Ex. A, art. 12.2, 13.4, 20.8. For example, the CBA provides that, in the event of non-reappointment, "[a]ll employees … are entitled to the following written notice that they will not be offered further appointment: … For employees with two (2) or more years of continuous University service one year['s notice]." *Id.* art. 12.2.

57.   The CBA also provides that, in the event of layoff, "where circumstances permit, employees with three or more years of continuous University service should be provided at least one (1) year's notice," or the "reason for shortened period of notification." *Id.* art 13.4.

58.   The Individual Plaintiffs received layoff notices on May 5, 2023, which indicated that their employment would end on August 4, 2023—only three months

after the notice. Ex. F (May 5, 2023 Braasch Layoff Notice); Ex. G (May 5, 2023 McLaughlin Layoff Notice); Ex. H (May 5, 2023 Mohamed Layoff Notice). Although the Individual Plaintiffs contest whether their termination was a layoff or non-reappointment, their rights were violated regardless of whether they were laid off or not reappointed because both Article 12.2 and Article 13.4 of the CBA require a one-year notice.

59.     In addition, under the CBA, the "University shall make a reasonable effort to assist the employee in locating appropriate alternate or equivalent employment for laid-off employees within the University." Ex. A, art. 13.3. The same requirement applies in the event of non-reappointment. *Id.* art. 12.4.

60.     When the University of South Florida laid off the Individual Plaintiffs, it made no reasonable effort to assist them in locating appropriate alternate or equivalent employment at the University of South Florida, in breach of Articles 13.3 and 12.4 of the CBA.

61.     The Individual Plaintiffs entered the grievance process specified in the CBA. Their grievances were filed prior to the Effective Date of the Arbitration Ban but had not reached arbitration by the Effective Date. The Individual Plaintiffs, along with four other grievants, alleged that the University of South Florida violated the terms of the CBA by failing to provide one year's notice prior to their termination

20

and failing to make a reasonable effort to assist the grievants in locating appropriate alternate or equivalent employment.

62.     The University of South Florida held a "Step 1 meeting" regarding the grievance on June 15, 2023 and a "Step 2 meeting" on July 11, 2023. Each meeting was attended by the Individual Plaintiffs, the other grievants, a UFF representative, and the Vice Provost. On August 11, 2023, the Vice Provost decided not to sustain the grievance.

63.     Although the CBA prescribes arbitration by a neutral arbiter as the third and final step in the grievance process, *see, e.g.*, Ex. A, art. 20.8(C)–(E), the Vice Provost told UFF on August 11, 2023 that the University of South Florida will not allow the grievants to arbitrate his decision.

64.     Following "Faculty Guidance [on] Senate Bill 266" dated July 26, 2023, the University of South Florida Board of Trustees denied the Individual Plaintiffs their right to arbitrate their grievances before a neutral arbiter. *See* Ex. E at 3.

## III.    Defendants' Actions Are Unconstitutional

### A.    The Arbitration Ban Impairs Existing Contracts in Violation of Article I, Section 10 of the United States Constitution

65.     Article I, Section 10 of the United States Constitution states that "[n]o State shall … pass any … Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10.

66.     Under UFF and UFF-USF's existing CBA with the University of South Florida's Board of Trustees, dated December 17, 2021, and extending through August 7, 2024, faculty members have the right to initiate arbitration before a neutral arbiter if their grievances are not satisfactorily resolved by the University. Similarly, pursuant to Article 8.3 of the CBA, each Individual Plaintiff was appointed with an Employment Contract confirming that nothing in the Employment Contract waived the right to arbitration under the CBA. *See* Ex. A, art. 8.3; Ex. B (Aug. 2, 2012 Braasch Employment Contract); Ex. C (Dec. 6, 2011 McLaughlin Employment Contract); Ex. D (Mar. 30, 2011 Mohamed Employment Contract).

67.     By prohibiting arbitration of adverse personnel decisions before a neutral arbiter, the Arbitration Ban impermissibly impairs the existing CBA, in violation of Article I, Section 10 of the United States Constitution.

68.     The Arbitration Ban does not serve a significant and legitimate public purpose. The only justification for the Arbitration Ban that the State has asserted is that it makes it easier for university presidents—who are selected by political appointees—to replace existing professors with others more in line with that president's political views. But Florida has no compelling or legitimate interest in replacing current faculty members because of their political views, as such conduct is forbidden by the First Amendment to the United States Constitution.

22

**B.    The Arbitration Ban Deprives Faculty of Property Rights Without Due Process in Violation of Amendment XIV, Section 1 of the United States Constitution**

69.    Amendment XIV, Section 1 of the United States Constitution states that no State shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1.

70.    Public employment is a protected property right when a CBA or another employment contract requires notice and/or the opportunity for a hearing prior to termination, or provides another indication of continued employment, such that a faculty member facing the loss of their employment has the right to due process protections. *See Bd. of Regents v. Roth*, 408 U.S. 564, 576–77 (1972). Detailed written notice requirements in a CBA or employment contract along with temporary reassignment requirements create a property right in continued employment.

**1.    The Individual Plaintiffs and Other Members of the Union Plaintiffs Have a Property Right in Their Continued Employment**

71.    The CBA between UFF-USF, UFF, and the University of South Florida Board of Trustees provides the Individual Plaintiffs with protections beyond those found in ordinary, at-will employment, including requirements of one year's notice before any termination, Ex. A, art. 12.2 (non-reappointment), 13.4 (layoff), the opportunity for a hearing to challenge their termination (including through arbitration

before a neutral arbiter), *id.* art. 20.8, and assistance in locating alternative, equivalent employment at the University of South Florida, *id.* art. 12.4 (non-reappointment), 13.3 (layoff).

72.    Each of the Individual Plaintiffs has been employed at the University of South Florida for over 10 consecutive years. *See* Ex. B (Aug. 2, 2012 Braasch Employment Contract); Ex. C (Dec. 6, 2011 McLaughlin Employment Contract); Ex. D (Mar. 30, 2011 Mohamed Employment Contract). Their Employment Contracts specify that the "employment offer[s] and contract[s] will remain in force unless otherwise specified." Ex. B (Aug. 2, 2012 Braasch Employment Contract); Ex. C (Dec. 6, 2011 McLaughlin Employment Contract); Ex. D (Mar. 30, 2011 Mohamed Employment Contract).

73.    These protections, which restrict the public university employer from terminating the Individual Plaintiffs at will, create a property right in continued employment for the Individual Plaintiffs, which could only be terminated in accordance with due process.

      **2.**    **The Arbitration Ban Has Deprived the Individual Plaintiffs and Other Members of the Union Plaintiffs of Their Property Rights Without Due Process**

74.    Due process requires—at a minimum—notice, a meaningful opportunity to be heard, and a decision by a neutral arbiter, who must be unbiased and free

24

from the appearance of bias. Due process requires a neutral arbiter to conduct a de novo review of all factual and legal issues that arise in connection with the decision to deprive a person of a property right.

75.    The CBA expressly provides the right to proceed to arbitration before a neutral arbiter at the request of the grievant where a grievance has not been resolved at Step 2. *See* Ex. A, art. 20.8. This right is confirmed by the Individual Plaintiffs' Employment Contracts.

76.    The Arbitration Ban denies the Individual Plaintiffs and other members of the Union Plaintiffs any opportunity to arbitrate adverse personnel decisions before a neutral arbiter or otherwise to seek meaningful review of those decisions, and instead leaves the decision by the university president or designee as the final step of any grievance. University presidents may, therefore, strip faculty of their jobs, tenure, pay, and benefits with immediate effect, and without review by a neutral arbiter.

77.    A university president is not a neutral arbiter: rather, the Arbitration Ban causes university presidents to serve as both prosecutors, in that they are the people with ultimate authority to fire faculty members on behalf of the university, and judges, in that they are the final arbiters as to whether their own decisions are appropriate. That inherent conflict violates due process.

25

78.     The Arbitration Ban biases the decisionmaker even further. University presidents are appointed by and can be removed by a university's board of trustees; a university president also serves as an officer on that board. Fla. Bd. of Governors Reg. 1.001(5)(c), 1.001(2)(d); *see, e.g.*, Operating Procedures of the University of South Florida Board of Trustees art. II, § G. The board of trustees of the University of South Florida is the opposing party in the grievances brought by the Individual Plaintiffs and in any grievance brought by UFF-USF members over personnel actions. The Arbitration Ban allows the president of the University of South Florida— who is controlled by the University's board of trustees and is a member of that board—to make final decisions in matters in which the board of trustees (including the University president) is itself a party, including the grievances of the Individual Plaintiffs. That inherent conflict also violates due process.

79.     The Arbitration Ban violates Amendment XIV, Section 1 of the United States Constitution by depriving the Individual Plaintiffs and other members of the Union Plaintiffs of review of adverse personnel decision by a neutral arbiter and by stripping them of their property rights in continued employment without due process.

## IV.   The Arbitration Ban Has Severe, Adverse Effects on Plaintiffs

80.     Unless enjoined by this Court, the Arbitration Ban will continue to have significant adverse effects on the Individual Plaintiffs and other members of the Union Plaintiffs and will cause them to suffer irreparable injuries.

81.     After more than a decade of work for the University of South Florida, the Individual Plaintiffs have been deprived of their lives' work and their livelihoods without the baseline contractual protections accorded under the CBA and in violation of their property rights as established by the CBA and their Employment Contracts.

82.     The Arbitration Ban also threatens the academic freedom of the Individual Plaintiffs and other members of the Union Plaintiffs. It promotes self-censorship and impairs their ability to publish and express their ideas because one wrong comment or writing in the eyes of a university president could cause these faculty members to lose their livelihoods and academic standing.

83.     The loss of bargained-for grievance procedures has caused the Union Plaintiffs immediate harm by materially impairing their existing CBA and depriving their members of the arbitration right the Union Plaintiffs negotiated on their members' behalf. The Union Plaintiffs have lost and continue to lose members as those members lose their jobs in violation of their contractual and property rights or elect to seek employment in other states and at other universities.

84.     No adequate remedy at law exists for the loss of the right to arbitrate adverse personnel decisions before a neutral arbiter because Defendants would raise the Arbitration Ban as an absolute defense.

## COUNT I
### Article I, Section 10 of the United States Constitution:
### Unconstitutional Impairment of Contracts

85.     Plaintiffs incorporate paragraphs 1–68 and 80–84 as if fully set forth herein.

86.     Article I, Section 10 of the United States Constitution states that "[n]o State shall … pass any… Law impairing the Obligation of Contracts."

87.     The Union Plaintiffs have a valid, binding, active CBA with the University of South Florida Board of Trustees, which governs the rights of university personnel, including professors, administrative staff, and other university staff, and under which the Board of Trustees agreed that the Union Plaintiffs and their members would arbitrate adverse personnel decisions before a neutral arbiter.

88.     The Individual Plaintiffs are intended third-party beneficiaries of the CBA between the Union Plaintiffs and the University of South Florida's Board of Trustees. Under the CBA, the Individual Plaintiffs have the right to arbitrate adverse personnel decisions before a neutral arbiter.

89.     Following the Arbitration Ban, under "Faculty Guidance [on] Senate Bill 266," Ex. E at 3, the University of South Florida Board of Trustees refused to arbitrate all grievances not in arbitration as of July 1, 2023.

90.    The Arbitration Ban substantially impairs the contractual rights of the Individual Plaintiffs and other members of the Union Plaintiffs under the CBA in violation of Article I, Section 10 of the United States Constitution by prohibiting both faculty members and universities from arbitrating adverse personnel decisions. The Arbitration Ban impairs rights and obligations of faculty members and universities on which the Individual Plaintiffs and other members of the Union Plaintiffs rely and for which Union Plaintiffs have collectively bargained.

91.    No public purpose is served by impairing the CBA, nor is the Arbitration Ban a "reasonable and necessary" means of fulfilling any legitimate public purpose that the State of Florida may assert.

92.    The Arbitration Ban violates Article I, Section 10 of the United States Constitution.

93.    The enforcement of the Arbitration Ban is an action under color of state law that has deprived Plaintiffs of rights, privileges, or immunities secured by the Constitution and laws of the United States.

94.    Plaintiffs are suffering ongoing, irreparable harm as a direct and proximate result of this violation of the United States Constitution.

<u>**COUNT II**</u>
**Amendment XIV, Section 1 of the United States Constitution:**
**Deprivation of Property Without Due Process**

95.     Plaintiffs incorporate paragraphs 1–64 and 69–84 as if fully set forth herein.

96.     Amendment XIV, Section 1 of the United States Constitution provides, "nor shall any State deprive any person of life, liberty or property, without due process of law."

97.     A public employee has a property right in continued employment when the contract governing his or her employment, such as a CBA or an employment contract, creates a reasonable expectation of continued employment. A CBA or an employment contract creates a property right when it requires certain process demonstrating that an employee is not an at-will employee, such as by requiring written notice before the employee may be terminated, mandating that an employee be allowed an opportunity to contest their termination at a hearing, or otherwise providing for continued employment.

98.     The Individual Plaintiffs and other members of the Union Plaintiffs have rights under the CBA—rights that are, for the Individual Plaintiffs, confirmed by their Employment Contracts—that go beyond the protections of at-will employment, require process (including notice and the opportunity for a hearing) before

termination, and expressly provide for continued employment unless otherwise specified. Those protections create a reasonable expectation of continued employment, and thus create a property right in continued employment and a right to due process.

99.    Due process, in turn, requires that an individual be given fair notice of a possible deprivation of a property right and an opportunity to be heard at a meaningful time and in a meaningful manner, which must include, at a minimum, a hearing before a neutral arbiter.

100.    Under the Arbitration Ban, the Individual Plaintiffs and other members of the Union Plaintiffs have no opportunity to arbitrate adverse personnel decisions regarding faculty—including in the areas of evaluations, promotions, tenure, discipline, or termination—before a neutral arbiter or to otherwise seek meaningful review of those decisions "beyond the level of a university president or designee." The Arbitration Ban provides no procedural safeguards to protect these important personnel decisions from error.

101.    Instead, the Arbitration Ban places the power to strip faculty of their property rights solely in the hands of state university presidents or their designees, who are not neutral arbiters. Those decisionmakers are subject to structural bias because they are responsible for making decisions or recommendations concerning

31

personnel decisions such as layoffs—the very decisions challenged in the grievance process. *See generally* Ex. A, art 16.3 (providing that the President has authority to impose a suspension or termination). They are further subject to structural bias because they are appointed by and serve as members of public university boards of trustees, who are the opposing party to an employee in any grievance.

102.   The state has no legitimate public interest in denying access to arbitration. Nor is the Arbitration Ban narrowly tailored to any such interest.

103.   The Arbitration Ban violates Amendment XIV, Section 1 of the United States Constitution.

104.   The enforcement of the Arbitration Ban is an action under color of state law that has deprived Plaintiffs of rights, privileges, or immunities secured by the Constitution and laws of the United States.

105.   Plaintiffs are suffering ongoing, irreparable harm as a direct and proximate result of this violation of the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief as follows:

*First*, a declaratory judgment that Plaintiffs' right to arbitrate adverse personnel decisions before a neutral arbiter under the CBA remains effective because the Arbitration Ban violates Article I, Section 10 of the United States Constitution;

*Second*, a declaratory judgment that SB 266's Arbitration Ban is unconstitutional as applied to faculty members covered by the CBA, including the Individual Plaintiffs (who are also covered by the Employment Contracts), under Amendment XIV, Section 1 of the United States Constitution, by denying them a meaningful opportunity to be heard before a neutral arbiter;

*Third*, a preliminary injunction enjoining Defendants from enforcing the Arbitration Ban in any manner or otherwise taking any action to impair Plaintiffs' existing contractual right to arbitrate grievances before a neutral arbiter under the CBA, as confirmed for the Individual Plaintiffs by their Employment Contracts, throughout the pendency of this action;

*Fourth*, a preliminary injunction enjoining Defendants from enforcing the Arbitration Ban in any manner or otherwise taking any personnel action or decision adverse to the Individual Plaintiffs or any other member of the Union Plaintiffs without the opportunity for arbitration before a neutral arbiter, throughout the pendency of this action;

*Fifth*, a permanent injunction enjoining Defendants from enforcing the Arbitration Ban in any manner or otherwise taking any action to impair Plaintiffs' existing contractual right to arbitrate grievances before a neutral arbiter under the CBA, as confirmed for the Individual Plaintiffs by their Employment Contracts;

*Sixth*, a permanent injunction enjoining Defendants from enforcing the Arbitration Ban in any manner or otherwise taking any personnel action or decision adverse to any public university faculty without the opportunity for arbitration before a neutral arbiter;

*Seventh*, an award of reasonable attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

*Eighth*, such other and further relief as the Court may find just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury for all matters so triable as of right.

Dated:  New York, NY                         Respectfully submitted,
        August 15, 2023
                                        SELENDY GAY ELSBERG PLLC

                                 By:   /s/        *Faith E. Gay*

Kimberly C. Menchion                         Faith E. Gay (FBN 129593)
(FBN 425613)                                 Yelena Konanova*
Florida Education Association                Max H. Siegel*
213 South Adams Street                       Elizabeth H. Snow*
Tallahassee, FL 32301                        Nancy A. Fairbank*
Tel: 850-224-7818                            Selendy Gay Elsberg PLLC
kimberly.menchion@floridaea.org              1290 Avenue of the Americas
                                 New York, NY 10104
Daniel J. McNeil*                            Tel: 212-390-9000
dmcneil@aft.org                              fgay@selendygay.com
American Federation Of Teachers              lkonanova@selendygay.com
555 New Jersey Avenue, N.W.                  msiegel@selendygay.com
Washington, D.C. 20001                       esnow@selendygay.com
Tel : 202-879-4400                           nfairbank@selendygay.com

Philip A. Hostak*                            Mark H. Richard (FBN 305979)
National Education Association               Phillips, Richard & Rind, P.A.
1201 16th Street N.W.                        9360 S.W. 72nd Street, Suite 283
Washington, DC 20036                         Miami, FL 33173
Tel: 202-822-7035                            Tel: 305-412-8322
phostak@nea.org                              mrichard@phillipsrichard.com

Martin F. Powell (FBN 70317)                 *(application for admission *pro hac
Meyer, Blohm and Powell, P.A.                vice* forthcoming)
403 East Park Avenue
Post Office Box 1547 (32302)                 *Attorneys for Plaintiffs*
Tallahassee, FL 32301
Tel: 850-878-5212
mpowell@meyerblohmlaw.com